This case rests on the well-established distinction between waiver and forfeiture. Waiver of course is when a party knowingly and intelligently chooses to advance or abandon a claim. Forfeiture is what comes about when a party misses a claim, comes about through neglect and mistake. The government's position is that because the prosecutor submitted a stipulated set of jury instructions in this case, that Mr. Teerlink can make no complaint about any of them. But this court's jurisprudence regarding waiver, even with regard to waiver involving a document that a party submitted, is much more nuanced than the government suggests. There are at least two threads that can be followed through this court's law on waiver regarding things that a party submitted. In Malloy, for example, the parties were arguing about a generic definition of conspiracy, and so they submitted documents. The defendants submitted something that covered a broad range of time and a broad range of geography, a 50-state survey. But then an appeal went, oh no, wait a minute, wait a minute, it's actually 1989 is the only time that matters. The government responded with invited error, saying look, you submitted contemporary definitions, so clearly you invited this error. This court looked at what the parties actually submitted and said it doesn't make sense. If he really gave his mind to the argument at the time before the district court that 1989 was the date that mattered, then he wouldn't have submitted what the court termed a hodgepodge that covered decades. And so this court reviewed it for plain error. And this case falls neatly within that analysis. There's simply nothing to suggest, no reason that the defendant would have stipulated to an instruction that's been wrong for 70 years, that this court said in 1990 was constitutionally defective, that this court in 2000 said trivialized the decision of whether to convict or not. So looking at whether the defendant gave his mind to that particular question, the evidence, just like in Malloy, suggests he didn't. Haven't we upheld or affirmed convictions that contain this type of language, even though it's been criticized for a couple decades? Well, seven. But I think that those cases look at the actual language of the instruction overall and find that it cures the defect. And there's been no argument for that. Why isn't that the case here? Because there's been no argument for the government about the language of the jury instruction in this case fixing that evident error. And so I think it's important to note that in the government's cases, to the extent it was evident in the case itself, the language of the jury instructions was different from the jury instruction given in this case. Wasn't there in this jury instruction a statement, you have to, in order to convict, you have to find the defendant guilty beyond reasonable doubt? Wasn't that statement somewhere in that jury instruction? Yes. And that is the precise language that several of our cases hark back to as fixing the otherwise questionable analogy that you're complaining about now. I'm not sure that I would read the cases the same way, Judge Abell, because I think that what that jury instruction is trying to define is reasonable doubt. So the fact that the jury instruction uses the term reasonable doubt doesn't really move the ball in terms of explaining it, particularly when you then have this sort of homely analogy, which is very tempting. We all know how we make decisions in our personal life. But the problem is, as this Court has noticed when it looked at that language, that it does trivialize the decision of whether to convict or not. So just repeating reasonable doubt I don't think cures the problem. The instruction does use it a couple times. It says you don't have to go beyond all doubt, just a reasonable doubt. And a reasonable doubt is a doubt founded on reason. So again, we don't have this argument from the government that there was any language in this jury instruction that cured this. And it's important to focus on this jury instruction. The Supreme Court has said over and over again, this is a very important jury instruction. You know, this is a little off your argument, but is this instruction regularly used in the District of Utah in criminal cases? This does have some differences from the stock instruction. And it has, you know, it has part from the Tenth Circuit stock instruction. And it also has some differences from Judge Stewart's instruction. So it is a bit of a mix. It's part of Judge Stewart's basket of instructions? Yes, the personal decision-making analogy is part of it. Because I know we're on a plain error review, but I would, you know, your office could have preserved this and, you know, given a direct challenge to that instruction over the years. It just kind of surprised me that, you know, we're looking at this in a plain error context when it seems like there would be dozens of opportunities for your office to have challenged it on direct review. I think that is a fair comment. But I also think it's a fair comment that this Court has over and over and over again not reversed on this instruction. And so... I know. Faults on both sides, perhaps. If over and over and over we have not reversed on this instruction, why is your case different where you're arguing that we should reverse on this instruction? My case is different in part because there's been no argument that other language in the instruction cures this instruction, cures the evident error. And because I don't know if it's been, you know, put to the Court clearly before that this Court has over and over and over again emphasized that this instruction is highly problematic, that it does trivialize the decision of whether to convict or not. Well, I can see from a management point of view, sometimes it's very hard to get the attention of district courts unless we deliver that in a bottle of reversal. But I'm not sure that that is a legal argument that a particular client or party can make. It's more of an administrative problem than we have. I think the legal argument, as I've said before, Judge Ebell, is that there's been no argument from the government that there's any other language in this jury instruction. So what we have is what this Court has acknowledged to be an error. So that meets, you know, that aspect of the plain error. It's been plain for 70 years. And we've had no argument about the language of this jury instruction that cures that error, which takes us on to the modified fourth that we've argued in the briefing. I'm still stuck a little bit on invited error because, you know, I don't know if it's a policy argument or really firmly supported by the rules or the cases, but it's designed to prevent a party from sandbagging the Court. And if you've got 70 years of precedent supporting an interpretation of the instruction, it's great to get that in front of Judge Stewart and see if he can fix his stock jury instructions. And if you don't give him the argument, he gives, you know, you've, you know, our cases say waiver. You try to preserve it through the footnote. But, you know, again, it does seem, you know, I guess the case the government relies on is stern, but it seems pretty close to the situation there. But it just seems to me, you know, you want the defense bar to be going after this jury instruction if it's been defective for 70 years. I think actually stern, I'm glad you brought it up, Judge Tinkovich, is a case on our side. Stern is the flip side of Malloy, which I talked about at the beginning. In stern, the challenged instruction embodied the defendant's theory of the case. So it makes sense to think that the defendant had given his attention to that very instruction. And with regard to the fact that we're here on plain error review or invited error, I want to make a point about the stipulation. It's been the government's position that the trial order that requires stipulation isn't all that coercive. That, you know, you get to stipulate to things you don't have a fight about, and then you can brief things that you do have a fight about. But what that means is that you're given a binary choice as a trial lawyer in front of Judge Stewart, which is that what the trial order says is, in the event that the parties can't produce a complete set of jury instructions, then they may argue, they may submit separately the ones they have an issue with. So what that means is, as I pointed out in the briefing, if you don't know there's a problem, you've invited error. If you do know there's a problem, it's fully preserved. So there's really no choice at all. So this creates a problem, as I pointed out, for lawyers who are appearing in the District of Utah where there are trial orders like this. So the extent to which you can stipulate to a jury instruction if we take a strict approach to waiver is zero. So you can't comply at all. What weight do we give to this odd footnote he said that I'm agreeing to submit this, but if we find a problem later, I reserve the right to challenge it. That's a bit odd. I don't quite know whether that takes away the effect of waiver, the sting of it. If I were a district judge and I got that, what would I make of it? I think what you would make of it is that that footnote places us within this tradition of waiver versus forfeiture. I think they're okay, but if I've made a mistake, I haven't waived it. And given the difficulties, as I've said, of obeying this trial order and submitting stipulated instructions, this is an effort to ensure that plain error review still exists. And I would also like to point out that the government is the party who actually submitted these stipulated instructions. So presumably the prosecutor either typed or at least cut and paste that language that's in the footnote. So arguably the government stipulated by filing a stipulation containing this, that the defendant was not waiving plain error review. I mean, that seems like a clearer case of sandbagging to me than the government's argument about this footnote. But if we endorse the footnote technique, then haven't we allowed the defense bar to eviscerate invited error in circumstances like this? It'll be every lawyer will put in the footnote and then this opinion would endorse that practice and voila, no more invited error, at least as to jury instructions. I would argue that this court already looks at what the party's intended. So a stipulation could be, probably would be evidence that this party would take, this court would take into account that a party may have invited error, but it's not sufficient. If I go to the second thread that I wanted to mention about the way this court explores invited error, at Cornelius is the case that's the linchpin for that, where the party originally agreed to a jury instruction, but then when this jury sent out a question, this court said he implored the district court to stick with the original instruction and then argued on appeal that it was erroneous. And this court based the invited error decision, not on that original agreement, but on the fact that he expressly endorsed it at trial. And that thread runs through this court's jurisprudence as well in Jarrah, where we devote, the court devoted pages to the pages in the transcript where the parties argued about the precise instruction on appeal. So I don't think this is going to open the floodgates to plain error review and eviscerate invited error. I think the reverse danger is more real that obeying this trial order does in fact eliminate plain error review of jury instructions altogether or create a trial management problem for district judges in Utah because defense lawyers are going to say, sorry, I can't stipulate to anything. I'm going to object to this instruction on the elements and that's all I can do to participate in this. And if there are no further questions, I'll reserve my remaining time for rebuttal. Thank you, counsel. Good morning and may it please the court. I'm Joseph Palmer from the Justice Department. This is a textbook case of invited error. When a party proposes an instruction, he relinquishes his ability on appeal to challenge the same instruction. There's no requirement that the defendant at the time that he proposes the instruction have subjectively had in mind the legal theory that he later raises on appeal. And the absence of that requirement is made clear by this court's recent decision in McBride. In McBride, the parties jointly propose an instruction as here. And there was no hint of any evidence that at the time of proposing the instruction, the defendant had in mind the legal theory that he later raised. And in fact, this court explicitly found that he didn't. A few quick details on McBride to explain that. In McBride, the jury instruction at issue defined a scheme to defraud. And the defendant claimed on appeal that this instruction was faulty because it failed to incorporate the analysis from a recent Supreme Court decision. And so the court considered on appeal whether the supervening decision exception to the invited error doctrine applied. And in doing so, it determined that the right to control theory, the theory that was embodied in the Supreme Court case, had played no role in the defendant's original decision to propose the instruction. And yet the court applied the invited error doctrine anyway. And so McBride makes clear that it doesn't matter whether the defendant specifically had in mind the legal basis for the appeal that he later raises. It is enough for the invited error doctrine to apply that the defendant proposed the jury instruction to the court. That's also confirmed by this court's decision in Jareb. Well, that generally makes sense because courts are not very well equipped to get inside the mind of litigants or lawyers. We don't like to make that a standard except importantly when it involves a defendant doing something. That's correct, Your Honor. Particularly in the context of jointly proposed instructions, there's not ordinarily going to be any on-the-record evidence about how the crafting of the language in the instruction took place. The negotiation, who wanted what language, the crafting of the language will have happened between the parties. And then when there's a joint submission to the court, and the court accepts the language that the parties said, we want you to give this language, then there's generally not going to be a record about what the parties had in mind at the time that they proposed that language. Do you think this instruction is plainly erroneous? No, Your Honor. Why not? This court has twice upheld instructions that use a similar willingness to act formulation that the defendant challenges here. On De Novo review, applying De Novo review in those cases, the court made clear that while that language is problematic, in and of itself it doesn't constitute a constitutional violation. There has to be additional deficiencies in the instruction. Now that the defendant has relied on, has argued that the government hasn't... Yeah, I thought her argument was that you hadn't really made that specific argument, so if you could address that. So the first thing I would say is that on plain error review, it's the defendant's burden to identify some deficiency in the instruction other than the deficiency that this court has twice held on De Novo review isn't enough to reverse a conviction. In addition, the instruction is otherwise exemplary. Well, you didn't make the argument. I mean, are you agreeing with Ms. Piri that you did not make that argument? I don't think so, Your Honor. And I know it's her burden on plain error, but... It's kind of ironic in an invited error case that you wouldn't make that good argument. Well, I think we have made the argument. We've quoted the instruction and we've said that the deficiency that the defendant identifies isn't enough. And the instruction is otherwise as closely tracks this court's pattern instruction. The instruction in this case is essentially aside from the willingness to act language, this court's pattern instruction. And we've argued that the instruction adequately conveyed the concept of reasonable doubt to the jury and there's no reasonable probability that the jury would have believed that the instruction allowed conviction based on insufficient proof. Well, I know this is a bit of an aside, but the United States has no interest in sanctioning jury instructions that lower the burden of proof in these cases. And it seems like you may have a joint interest with the defense bar to have the best possible burden of proof jury instruction in the District of Utah. And however this case comes out, it will, but it seems like there ought to be some unified interest in making sure that our Tenth Circuit pattern instructions are not being diluted by local practice. I don't disagree with that, Your Honor. And in this case, we're not asking the court to specifically endorse this language. I want to make one quick point, though, about the stock jury instructions. Judge Stewart's stock instruction does not contain the willingness to act language that the defendant objects to hear. His formulation is in terms of hesitate to act. Where did this language come from, then? The record doesn't make it clear, Your Honor. It's definitely willingness to act language has been around for a long time. Cases that use it are... And it's been criticized for a long time. It's been criticized for a long time. We don't dispute that. But the important point for this court's task in this case is whether it's... Assuming you get past the invited error, and you shouldn't, but if you do, whether it's a clear and obvious constitutional violation for an instruction that is otherwise exemplary and closely tracks the pattern instruction to include this willingness to act formulation, this court has twice held on de novo review that it isn't. And so even on de novo review, we should prevail all the more so on plain error that the defendant concedes would apply if the invited error doctrine doesn't. Guildsall, could I get you to address the footnote? Yes, Your Honor. The footnote can't alter the consequences of having jointly proposed the instruction. And the footnote acknowledges that the defense is jointly proposing the instruction. The footnote says, as a result of jointly proposing this instruction, the defendant asserts that... Is not intending to waive any... The application of plain error. But once the defendant acknowledges that they are joining in proposing the instruction, what consequences follow from that are a function of this court's cases and not of the defendant's stated preference in the footnote. The footnote is... What authority do you have for that? Well, I think I would just point to the court's cases that set forth the principle that when a defendant proposes an instruction, the consequences of that are invited error. And there's no requirement that there be evidence that the defendant specifically intended to and had in mind the legal claim that he later raises. Well, are you saying that that's the rule of McBride? That's what you're saying? Yes. And that you can't alter that as the defendant? Under any circumstance, you can't essentially say something different as this defendant apparently tried to do in a footnote? You just can't do that? You can't do that if you're still jointly proposing the instruction. So the defendant can choose, and the district court's order allowed this, the defendant can choose not to jointly propose an instruction and submit his own or object to one that's proposed by the government or formulated by the court. And the defendant had opportunity to do that both at the time that the instructions were submitted and immediately before trial began that the court gave another opportunity for the parties to object to the instructions. But what the defendant can't do is jointly propose the instruction and then drop a footnote that tries to disclaim the consequences of having done that. If the defendant doesn't want to jointly propose the instruction, they have to clearly not jointly propose the instruction, but the footnote that we're discussing explicitly says that the defendant is still jointly proposing the instruction. And so this court's decision in McBride and in Sturm make clear that that is enough to trigger the invited error doctrine. There's no requirement that the defendant be subjectively aware of the claim that he later raises on appeal. In footnote 10 of this court's decision in Jareb, the court made clear that there is no such requirement in analyzing this court's previous decision in Sturm. The dissent in Jareb said that Sturm was different because in Sturm the defendant had made a tactical decision to propose the instruction, but the majority in Jareb rejected that reading of Sturm. And it stated, and I'm quoting now from footnote 10 in Jareb, nothing in Sturm indicates that Mr. Sturm or his counsel had given a moment's thought to how the relevant term should be defined for the jury. Quote, we have no idea whether that omission was a tactical decision or a failure to consider the issue at all. So the court is making clear that it doesn't matter whether it was a tactical decision or whether it was simply a failure to consider it. When a defendant or when any party proposes an instruction, that affirmative act is enough for this court to infer that that party has relinquished its ability to challenge that instruction on appeal. I want to make one quick point about the Cornelius case, Your Honor. In Cornelius, the defendant did not originally propose the instruction. It was the, this court's decision in Jareb makes clear that the original submission of the instructions was merely a forfeiture by the defendant, and it only became a case of invited error afterward in the context of the defendant's proposal for how the court should respond to a jury question. So Cornelius helps rather than undermines the point that we're making here, which is that when a party endorses an instruction by tendering it to the court, by submitting it to the court, by proposing it, that's enough to trigger an invited error. The defendant also argues that this invited error principle would vitiate plain error review. I don't think that there's any shortage of plain error review of jury instruction claims in the federal reporter or any reason to think that they will become extinct if the court continues to apply invited error as it has. If the plain error would apply even when parties jointly propose instructions, if the district court gives a different instruction from the ones that the parties submit, or if there's an omission to which neither party objected, or any number of other circumstances, I just don't think that there's any risk that that plain error review of jury instructions would become extinct. And in any event, it's not a bad thing for parties to be given an incentive to be very careful about the language that they propose that the district court give. Unless the court has any further questions. Thank you, counsel. Ms. Peery, you have some rebuttals? I have two observations. The first is that my learned friend and I are arguing about this court's footnotes in a series of cases that involve invited error in jury instructions. I would point to note seven in McBride, which talks about Jarob and says, waiver is always subjective. And we look in Jarob at whether the defendant's actions, including, which means not limited to, proposing the jury instruction, converted forfeiture into knowing an intelligent waiver. And this point suggests to me that we need clarification, that the District of Utah needs clarification about what trial lawyers can and cannot do to have the option of plain error. The footnote attempts to chart a course between the government's reading of Jarob and what's required in the trial order. And this brings me to my second point, which is, there is a stipulation in this case, but it's not an ordinary stipulation. The parties offered stipulations that are quite ordinary, like this was a registered firearm dealer. We agree to that. The gun traveled in interstate commerce. Those are sort of ordinary stipulations. But the stipulation to the instructions is more of a coerced stipulation. Because as I said, the trial order says, if you can't give me a complete set, then you're free to argue the ones you disagree about. It doesn't say you are free to just submit the arguments, the instructions that you disagree about. So this is an unusual kind of stipulation. And the footnote, to which the government arguably stipulated, is an effort to chart a course. And again, this court's guidance would be useful on these matters. Thank you, Counsel. And before you sit down just on that point, this is beyond these issues, but it seems to me if there's a real problem with these jury instructions, that there's potential error being infected in cases in the District of Utah, that both the government and the organized defense bar might have an interest in trying to fix that. I'm sure Chief Judge Shelby and the other district judges would entertain in good faith recommendations. If the U.S. Attorney's Office agrees with that reading, I think it might be productive to try to fix that so that we don't have future cases where you have to fight over footnotes and context and the like, which we do. That's our job. But this seems like an area where maybe both sides have an alignment of interest in getting the instructions done correctly. So I throw that out there. Take it back to your bosses, see what they think. Thanks.